IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**February 8, 2024**

C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**JESSE C.,**
**Respondent Below, Petitioner**

**vs.) No. 23-ICA-169**          (Fam. Ct. Harrison Cnty. No. FC-17-2019-D-35)

**VERONICA C.,**
**Petitioner Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Jesse C.[1] ("Father") appeals the Family Court of Harrison County's March 21, 2023, final order denying his petition for modification regarding custody and child support of the parties' minor child, G.C. Respondent Veronica C. ("Mother") filed a response in support of the family court's decision.[2] Father did not file a reply. The issue on appeal is whether the family court erred in finding that an equal 50-50 custody arrangement was not in the child's best interest.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision. For the reasons stated below, this case is remanded to the family court with directions to enter a new order with sufficient findings of fact and conclusions of law.

The parties were divorced by final order entered on July 22, 2019, which incorporated their mediated parenting plan. Under the terms of the original parenting plan, the parties agreed that Mother would have primary shared custody of G.C. to accommodate Father's work schedule. It was agreed that Father would receive approximately 104

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.,* W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Father is represented by Jeffrey M. Strange, Esq. Mother is represented by Larry W. Chafin, Esq., and Debra V. Chafin, Esq.

1

overnight visits per year.[3] However, shortly after entry of the final divorce order, Father's work schedule changed, and the parties operated under a de facto parenting plan for more than two years. Under this plan, Father received approximately seventy-eight overnight visits per year.[4] Father left this employment in July of 2022.

Father started a new job in September of 2022, working night shift on an alternating 2/2/3 schedule.[5] He works twelve-hour shifts, and every other week he works an extra eight hours of overtime. Mother works full-time and has six consecutive days off during alternating weeks.[6] In October 2022, Father filed a petition for modification of custody and child support regarding G.C. and on February 27, 2023, the family court held a hearing on the petition. The court denied Father's petition for a 50-50 custody arrangement because it found that Father had failed to prove the modification was in the child's best interest. Instead, the family court increased Father's visits to 130 overnight visits per year.[7] The final order was entered on March 21, 2023, and this appeal followed.

When reviewing the order of a family court, we apply the following standard of review:

> "In reviewing ... a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law de novo." Syl. Pt., [in part,] *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

---

[3] Father's work schedule consisted of fifteen consecutive days on and six days off. He received parenting time all six of the days he was off work. Thus, he received six overnight visits every three weeks.

[4] Due to Father's new work schedule, he was only able to exercise parenting time on alternating weekends from Friday afternoon to Monday morning, which was three overnight visits every two weeks.

[5] A 2/2/3 schedule is described as two nights on, two nights off, three nights on, two nights off, two nights on, three nights off, etc. Father works from 7:00 p.m. to 7:00 a.m.

[6] Mother works twelve-hour shifts. She works Monday, Tuesday, and Wednesday, has Thursday through Tuesday off, works Wednesday, Thursday, and Friday, has Saturday and Sunday off, etc.

[7] Father's visits were increased from three overnight visits every two weeks pursuant to the parties' de facto agreement, to five overnight visits every three weeks.

*Amanda C. v. Christopher P.*, 248 W. Va. 130, 133, 887 S.E.2d 255, 258 (Ct. App. 2022); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate review of a family court order).

On appeal, Father first contends that the family court erred by allowing exhibits faxed by Mother to be admitted in violation of the court's scheduling order, which required witness lists and exhibits to be exchanged by the parties no later than January 9, 2023. We are unpersuaded by this argument.

The scheduling order stated, "[y]ou may deliver these items in person or you may mail them by REGULAR mail, not certified, to the other party or parties." Mother's counsel faxed her witness list and exhibits to Father's counsel on January 9, 2023. Father's counsel provided his witness list and exhibits to Mother's counsel on February 9, 2023. Rule 5(b) of the West Virginia Rules of Civil Procedure states, in part, that "[s]ervice upon the attorney or upon a party shall be made by delivering a copy to the attorney or party . . . or by facsimile transmission to the attorney or party[.]" Rule 12.04 of the West Virginia Trial Court Rules further states, "[s]ervice of any document in a civil action, other than original process, may be made by facsimile transmission subject to the provisions of these rules, other applicable rules and statutes, and W.Va. R.Civ.P. 5[.]" During the final hearing, the family court acknowledged that while it did not specifically authorize documents to be provided by facsimile, the order did not prohibit that form of service.

As his second assignment of error, Father argues that the family court erred by finding the parties had entered into a de facto agreement that reduced his custodial time after entry of the July 22, 2019, final divorce order. He avers that the family court spent most of the hearing typing on its computer instead of hearing relevant testimony. Specifically, he argues the parties' testimony reflects that he had visitation as his schedule allowed, which was more than every other weekend. Upon review, we find that this assignment of error lacks merit.

As a result of Father's change in work schedule, he exercised seventy-eight overnight visitations per year rather than 104 overnight visitations per year as reflected in the original parenting plan. Upon review of the family court record, the parties' testimony during the February 27, 2023, final hearing revealed that they would occasionally deviate from their de facto agreement to accommodate Father's work schedule. Nevertheless, contrary to Father's assertion, the occasional deviation did not alter their agreement so much that it increased his visitation. Their de facto agreement was solely due to Father's new work schedule, which ultimately reduced his visitation with G.C.

Lastly, Father's remaining assignments of error contend that the family court abused its discretion when it failed to award 50/50 custody by concluding that the modification

was not in the child's best interest.[8] The family court found that Father's new job was a substantial change in circumstances pursuant to West Virginia Code § 48-9-401 (2022),[9] but ultimately denied his request for 50/50 custody because Father failed to prove that the modification was in G.C.'s best interest. Father argues that the family court erred in its finding because Mother testified it was in the child's best interest to spend more time with Father. However, Father's interpretation of Mother's testimony is misconstrued. Although Mother testified that it was in the child's best interest to spend more time with him, she went on to explain that his 2/2/3 nightshift schedule was not in the child's best interest; she was further concerned about the child being left alone at night with a non-relative while Father was at work.

The family court, in denying Father's request for 50-50 custody, reasoned it was not in the child's best interest to adjust her schedule so drastically when she is accustomed to only spending approximately seventy-eight overnights with Father per year. Additionally, the court found that Father would undoubtedly be sleeping on some of his custodial days due to his night shift schedule. The court specifically found that Father was required to prove that the modification of custody was in the child's best interest pursuant to West Virginia Code § 48-9-401, which he failed to do.

Although Father assigns error regarding 50-50 custodial allocation not being in the child's best interest, his argument is misplaced but there is error, nonetheless. The family court applied the incorrect burden in determining whether the modification was in the child's best interest. West Virginia Code § 48-9-102a (2022)[10] makes it clear that 50-50 custodial allocation is rebuttably presumed to be in the best interest of the child. Thus, Father is not required to prove that 50-50 custodial allocation is in the child's best interest. However, Mother is entitled to produce evidence in an effort to rebut the 50-50 presumption. Additionally, West Virginia Code § 48-9-206(d) (2022) requires final

---

[8] It appears that Father's third and fourth assignments of error present a single issue. *See generally Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating that "the assignments of error will be consolidated and discussed accordingly").

[9] West Virginia Code § 48-9-401 states, in-part, "a court shall modify a parenting plan order if it finds . . .that a substantial change has occurred in the circumstances of the child or of one or both parents and a modification is necessary to serve the best interests of the child."

[10] West Virginia § 48-9-102a states, "[t]here shall be a presumption, rebuttable by a preponderance of the evidence, that equal (50-50) custodial allocation is in the best interest of the child."

parenting plan orders to contain specific findings of fact to support the court's decision.[11] West Virginia Code § 48-9-209 (2022) provides a non-exclusive list of factors a court shall consider when making such findings.

Here, the family court erroneously concluded that it was Father's burden to prove the proposed 50-50 custodial allocation was in the child's best interest. When a court finds a substantial change of circumstances has occurred pursuant to a petition for modification of custody, 50-50 custodial allocation is presumed to be in the best interest of the child and shall be awarded unless rebutted by a preponderance of the evidence. W. Va. Code § 48-9-102a. West Virginia Code § 48-9-603(a) (2022) controls the effectiveness of the 50-50 presumption in this matter, providing that "[the presumption] shall become applicable upon the effective date of [the] amendment." Accordingly, any best interest analysis conducted after June 10, 2022, the effective date of West Virginia Code § 48-9-102a, is required to consider the 50-50 presumption. As to the burden of proof, the presumption points toward equal parenting time; therefore, *any* party seeking to deviate from a 50-50 allocation must overcome the presumption.

With that in mind, specific findings of fact and conclusions of law are required when there is a deviation from 50-50 custodial allocation pursuant to West Virginia Code § 48-9-206(d). *Jonathon F. v. Rebekah L.*, 247 W. Va. 562, 565, 883 S.E.2d 290, 293 (Ct. App. 2023). Thus, the family court must analyze whether Mother rebutted the presumption to justify the deviation. Upon remand, the family court may reach the same conclusion.[12] However, any party seeking more than 50-50 custodial allocation has the burden of rebutting the presumption and a proper analysis must be performed by the court.

For the foregoing reasons, we affirm the family court's ruling with respect to Father's first two assignments of error, reverse the family court's finding that the burden was on Father to prove that 50-50 custodial allocation was in the child's best interest, and remand this case to the family court with directions to issue an order with specific findings of fact and conclusions of law in accordance with West Virginia Code §§ 48-9-206 and 48-9-209 by adhering to West Virginia Code § 48-9-102a. The final order is hereby converted to a temporary custodial allocation order until the entry of a new final order consistent with this decision is issued by the family court.

Affirmed, in part, Reversed, in part, and Remanded.

---

[11] West Virginia Code § 48-9-206(d) states, "[t]he court's order determining allocation of custodial responsibility shall be in writing, and include specific findings of fact and conclusions of law supporting the determination."

[12] On remand, child support should be modified if the family court reaches a different conclusion regarding custodial allocation after performing the required analysis.

5

**ISSUED:**  February 8, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear